ELIZABETH J. OSBORNE, Respondent, *v.* THE NEW YORK MUTUAL INSURANCE COMPANY, Appellant.

*Supreme Court, Second Department, General Term, June 28, 1889.*

1. *Insurance. Question for jury.*—In an action on a policy of marine insurance, the evidence as to the seaworthiness of the vessel insured by defendant was held sufficient, in this case, to entitle the plaintiff to go to the jury on the question of seaworthiness.

2. *Same. Seaworthiness.*—Seaworthiness is a relative, not an absolute, term; and when it is held that it is a condition precedent to the taking effect of the insurance policy that the vessel is seaworthy, it is not intended that an old vessel must be understood to be equally sound as a new vessel with a higher rate.

3. *Same. Evidence.*—In an action on a policy of marine insurance, evidence of the prices demanded by mechanics, in the port of distress, to make the repairs necessary to enable the vessel to continue her voyage, is admissible, to justify the abandonment.

4. *Same. Damages.*—Advertisements for sealed proposals and the lowest bids received, are proper for this purpose, and competent for the jury to consider in connection with the other evidence.

5. *Same. Burden of proof.*—The burden of showing the expense of making such repairs, is on the insured.

This was an action upon a policy of marine insurance issued by defendant. The complaint alleged that said vessel, while proceeding on the voyage, was, by the perils of the sea, damaged in her hull, rigging, and appurtenances, insomuch that for safety said vessel put into the port of St. Thomas, where, upon a survey duly called upon the plaintiff's behalf, said vessel was found to be, and in fact was, so seriously damaged and injured as to become a total loss, and

was thereafter abandoned by the plaintiff to the defendant, and due notice thereof, in writing, given to the defendant. Among other defenses, defendant claimed that the vessel was not seaworthy at the date of the policy, and that the damage was not caused by the perils of the sea, but was the consequence of her bad condition at the beginning of the voyage.

Appeal from a judgment in favor of plaintiff, rendered on a verdict, and from an order denying a motion for a new trial.

*George A. Black*, for appellant.

*James K. Hill and Wing & Shoudy*, for respondent.

PRATT, J.—The most important matter for consideration is whether upon the proofs introduced as to seaworthiness of the vessel, the plaintiffs were entitled to go to the jury on that question. The testimony on this point of Captain Osborne is to the effect that on the voyage from Cape Town to Pernambuco the vessel was in splendid condition, and arrived at Pernambuco in good condition, December, 1885. Was in good condition when towed out of the harbor to begin the voyage upon which the loss took place.

The testimony of Captain Osborne is criticised as being that of the person whose conduct is under investigation, and who may also be considered to have a money interest in the litigation, his wife being the plaintiff.

But he is corroborated by the testimony of the official surveyor who examined the vessel June 29, 1885, and found her seaworthy, and so reported. He says he went all over very carefully, and as far as he could see, she was in good condition. He saw no signs of old age about her; there were no missing beams. Upon the report then made, the rating of the vessel in the shipping record was continued for a year.

The chief surveyor of the board of underwriters, of which

defendant is one, testified for plaintiff, and explained that when a vessel had had her rating five years and it was extended one year, except in a vessel built in the Mediterranean, she was pretty near her end.

Seaworthiness is a relative term, not an absolute one. And when it is held that it is a good condition precedent to an insurance policy taking effect that the vessel be seaworthy, it is not intended that a vessel sixteen years old at nigh to lose her rating must be understood being equally sound as a new vessel with a higher rate.

An illustration is found in the testimony of McLeod called by defendant, who states that when in command of a sugar vessel he discovered a leak while at the wharf in Cuba, yet he started for New York with the leak, and considered it good seamanship. The vessel reached home in safety and when put on the dry dock two planks in the bottom were found broken. Being asked if he considered her seaworthy when in that condition, he says : " That is rather a difficult question to answer," but under all the circumstances considered that it was.

The argument of defendant is that in view of the facts shown by the log that no extraordinary weather prevailed, the loss of the vessel shows conclusively that she was unseaworthy when the voyage begun.

After some hesitation we are of opinion that the testimony justified the submission of the question to the jury and that their verdict must control.

The exception by defendant to the evidence of the prices demanded by mechanics in St. Thomas to make the repairs necessary to enable the vessel to continue her voyage, was not well taken.

The plaintiff had the burden of showing the expense of making such repairs. To do that, the advertisements for sealed proposals were put in evidence, and, also, the lowest bids received. These were competent for the jury to consider in connection with the other evidence.

In the absence of collusion or fraud they would go far to show what would be the expense of making the repairs.

The exceptions to the charge to the jury do not require discussion.

Upon the whole case we are of opinion that the verdict should be affirmed, with costs.

All concur.